UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURA J. WOODLING,

                         Plaintiff,

v.                                                      1:17-CV-0606
                                                        (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PPLC           IDA COMEFORD, ESQ.
  Counsel for Plaintiff                       KENNETH HILLER, ESQ.
6000 North Bailey Ave., Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                   JAMES DESIR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II      JULIA WALKER, ESQ.
  Counsel for Defendant                       KRISTINA COHN, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

On June 11, 2018, the parties consented, in accordance with a Standing Order to

proceed before the undersigned.  (Dkt. No. 14.)  The court has jurisdiction over this

matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the

parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is

granted in part and denied in part, and the Commissioner's motion is granted in part and

denied in part.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1961.  (T. 90.)  She completed high school.  (T. 215.)

Generally, Plaintiff's alleged disability consists of rheumatoid arthritis, hiatal hernia,

herniated disc in spine, depression, asthma, and high blood pressure.  (T. 214.)  Her

alleged disability onset date is November 30, 2012.  (T. 80.)  Her date last insured is

December 31, 2017.  (T. 80.)  She previously worked as an administrative assistant and

office clerk.  (T. 216.)

### B. Procedural History

On June 13, 2013, Plaintiff applied for a period of Disability Insurance Benefits

("SSD") under Title II of the Social Security Act.  (T. 90.)  Plaintiff's application was

initially denied, after which she timely requested a hearing before an Administrative Law

Judge ("the ALJ").  On August 13, 2015, Plaintiff appeared before the ALJ, Timothy M.

McGuan.  (T. 41-76.)  On October 23, 2015, ALJ McGuan issued a written decision

finding Plaintiff not disabled under the Social Security Act.  (T. 17-40.)  On May 4, 2017,

the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's

decision the final decision of the Commissioner.  (T. 1-7.)  Thereafter, Plaintiff timely

sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 22-34.)  First, the ALJ found Plaintiff met the insured status

requirements through December 31, 2017 and Plaintiff had not engaged in substantial

gainful activity since November 30, 2012.  (T. 22.)  Second, the ALJ found Plaintiff had

the severe impairments of multi-articular osteoarthritis of the right hand and wrist; possible internal derangement of the right wrist; multi-articular osteoarthritis of the left hand and wrist; rheumatoid arthritis; left knee arthritis with status-post total left knee replacement; right total knee replacement on February 11, 2014; herniate disc at L2-L3; and obesity. (T. 23.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 25.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with additional limitations. (T. 26.)[1] The ALJ determined Plaintiff could sit for up to seven hours; stand and or walk for up to four hours with a "sit and stand option" after 45 minutes; and lift up to 20 pounds occasionally, and 10 pounds frequently. (*Id.*) The ALJ determined Plaintiff could occasionally finger and handle with her dominant hand; occasionally kneel, crouch, crawl and stoop; and occasionally reach with her dominant upper extremity. (*Id.*) Fifth, the ALJ determined Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 33-34.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly consider the Listing for

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

the spine as required.  (Dkt. No. 11 at 16-20.)  Second, Plaintiff argues the ALJ failed to provide any good reasons for disregarding the opinions of treating physician, Carlos Martinez, M.D.  (*Id.* at 20-24.)  Third, and lastly, Plaintiff argues the ALJ misconstrued and cherry-picked the record in making a credibility determination.  (*Id.* at 24-26.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues the ALJ properly evaluated Plaintiff's back impairment under Listing § 1.04A.  (Dkt. No. 12 at 16-18.)  Second, Defendant argues the ALJ properly assessed Plaintiff's symptoms. (*Id.* at 19-22.)  Third, and lastly, Defendant argues the ALJ provided good reasons for assigning little weight to Dr. Martinez's opinions.  (*Id.* at 22-24.)

### C.    Plaintiff's Reply

Plaintiff filed a reply in which she reiterated her argument that she meets Listing § 1.04A.  (Dkt. No. 13.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.  ANALYSIS

### A.  Treating Physician, Carlo Martinez, M.D.

Plaintiff asserts the ALJ failed to follow the treating physical rule and failed to provide good reasons for affording Dr. Martinez's opinions less than controlling weight. (Dkt. No. 10 at 20-24.)

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2)[2]; *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

---

[2]     Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv).

The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(iv); *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)). "The failure to provide 'good reasons for not crediting the opinion of a [plaintiff's] treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

Plaintiff received care from treating rheumatologist, Dr. Martinez. Dr. Martinez completed multiple medical source statements. On July 23, 2013, Dr. Martinez completed a medical source statement form. (T. 529-533.) The doctor noted Plaintiff indicated Plaintiff had arthritis in both hips, both knees, and both wrists. (T. 529.) When asked if Plaintiff had joint pain, he answered "yes" and wrote Plaintiff had mostly pain in her knees and hips, however, she has had polyarthralgias in her hands, wrists, hips, and knee. (*Id.*) Dr. Martinez indicated Plaintiff had swelling in her metacarpophalangeal ("MCP") joints, proximal interphalangeal ("PIP") joint, and ankles. (*Id.*) He indicated Plaintiff had tenderness in her knees. (*Id.*) Dr. Martinez indicated Plaintiff's limitations/loss of function interfered seriously with her ability to independently sustain activities. (T. 530.) When asked if Plaintiff had difficulty with "any of the

following," he checked "[c]arrying out routine ambulatory activities such as shopping and/or banking" and "climbing steps at a reasonable pace without stopping to rest." (*Id.*) Dr. Martinez described Plaintiff's treatment modalities and noted she was scheduled for left knee replacement. (*Id.*) When asked if Plaintiff's symptomatology was consistent with medical findings, Dr. Martinez answered "yes." (T. 531.) When asked how often Plaintiff would be absent from work due to her impairment or treatment, Dr. Martinez checked the box "two days a month." (*Id.*) Dr. Martinez did not answer the question asking if Plaintiff's symptoms and limitations existed at the same or similar degree of severity since November 30, 2012. (*Id.*) Instead, the doctor wrote, "[Plaintiff] has had periods of exacerbation since [illegible] diagnosed. [Plaintiff] known to have RA since age 7 – has been on different types of aggressive management." (T. 531.)

On July 23, 2013, Dr. Martinez also completed a "Pain Questionnaire." (T. 532-533.) When asked how he would describe Plaintiff's pain as a result of her medical condition, Dr. Martinez checked "moderately severe: an impairment which seriously affects ability to function." (T. 532.) When asked if Plaintiff's complaints were consistent with his objective findings, the doctor answered "yes." (*Id.*) When asked to what extent pain interfered with Plaintiff's ability to maintain attention and concentration to sufficiently complete a task in a timely manner, Dr. Martinez checked "frequently (34-66% of the time)." (*Id.*) Dr. Martinez again did not answer the question of whether Plaintiff's symptoms and limitations existed since November 30, 2012. (*Id.*) Dr. Martinez instead wrote, "[h]as had variable degree of symptoms [for] years." (*Id.*) When asked if Plaintiff were to return to work which allowed for a sit/stand opinion, which of the following would be the minimum rest periods required in addition to a 30

minutes lunch and two 15 minute breaks, Dr. Martinez checked "[o]ne 10 minute rest period per hour."  (T. 533.)

On November 20, 2013, Dr. Martinez completed a "Lower Extremities Questionnaire" form (T. 545-546), a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" form (T. 547-549), and a "Function Questionnaire – Upper Extremities" form (T. 549-550.)  When asked how he would describe Plaintiff's pain, Dr. Martinez checked "moderate: an impairment which affects but does not preclude ability to function."  (T. 545.)  When asked if Plaintiff's complaints of pain were consistent with the objective findings, Dr. Martinez answered "yes."  (Id.)  When asked to what extent Plaintiff pain has interfered with her ability to maintain attention and concentration sufficient to complete tasks in a timely manner, the doctor checked "frequently (34-66% of the time)."  (Id.)  When asked if Plaintiff experience swelling, the doctor checked "yes."  (Id.)  When asked if Plaintiff could stand/walk six out of eight hours per day on a sustained basis, the doctor answered "no."  (T. 546.)  When asked if Plaintiff could sit in an upright position on a sustained basis without increase in pain and/or swelling, the doctor answered "no."  (Id.)  When asked how often Plaintiff's impairments or treatment would cause her to be absent from work, the doctor answered "more than two days a month."  (Id.)

On November 20, 2013, Dr. Martinez opined Plaintiff could sit for "up to 2" hours and stand and/or walk "up to 2" hours in an eight hour workday.  (T. 547.)  When asked to provide medical findings to support this assessment, Dr. Martinez wrote Plaintiff "[h]as significant weight bearing joint arthralgia."  (Id.)  Dr. Martinez indicated, due to small joint hand involvement and shoulder pain, Plaintiff could occasionally lift and carry

up to 10 pounds and never lift and carry over 11 pounds. (*Id*.) He opined Plaintiff could

occasionally: climb, kneel, stoop, and balance. (*Id*.) He opined Plaintiff could never

crouch or crawl. (*Id*.) Dr. Martinez indicated Plaintiff's ability to reach, handle, and

push/pull were "frequently (34-66% of the time) affected by her impairment. (T. 548.)

He indicated Plaintiff's ability to work from heights; work with vibrations, moving

machinery, temperature extremes, and humidity were "frequently (34-66% of the time)"

affected by her impairment. (*Id*.) Dr. Martinez wrote Plaintiff should avoid use of

vibrating tools and avoid repetitive use of feet and hands. (*Id*.)

In November of 2013, Dr. Martinez opined Plaintiff's symptoms "frequently (34-

66% of the time)" interfered with her ability to: use either upper extremity; reach at

shoulder level or below bilaterally; grip and/or grasp with her left upper extremity. (T.

549.) Dr. Martinez opined Plaintiff's symptoms "constantly (67-100% of the time)"

interfered with her ability to: reach overhead bilaterally; grip and/or grasp with her right

upper extremity; push or pull arm controls; and perform fine manipulation. (T. 549-550.)

When asked what would be the greatest weight (in pounds) Plaintiff could lift/carry on

an occasional basis with her left, Dr. Martinez wrote "5." (T. 550.) When asked what

would be the greatest weight (in pounds) Plaintiff could lift/carry on an occasional basis

with her right, Dr. Martinez wrote "5." (*Id*.) The doctor indicated Plaintiff could not work

with vibratory tools and should avoid extreme hot or cold. (*Id*.) When asked if Plaintiff

could perform activity requiring bilateral manual dexterity on a frequent basis, Dr.

Martinez answered "no." (*Id*.)

On December 20, 2013, Dr. Martinez completed an "Exertional Limitation

Questionnaire" (T. 878), a "Lower Extremities Questionnaire" (T. 879-880), a "Medical

Assessment of Ability to Do Work-Related Activities (Physical)" form (T. 881-882), and a "Functional Questionnaire - Upper Extremities" form (T. 883-884).

When asked to check the appropriate exertional level of work which he felt Plaintiff was capable of performing on a sustained full time basis, Dr. Martinez checked the statement "SEDENTARY WORK – Lifting 10 pounds maximum and occasionally lifting or carrying such articles as dockets (e.g. files), ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing (two out of eight hours) is required."  (T. 878.)

Dr. Martinez's December 2013 "Lower Extremities Questionnaire" was essentially the same as his November 2013 questionnaire with some differences.  (Compare T. 545-546 with T. 879-880.)  Namely, in December 2013, Dr. Martinez indicated Plaintiff would be absent two days a month.  (T. 880.)

Dr. Martinez's December 2013 "Medical Assessment of Ability to Do Work-Related Activities (Physical)" form was also essentially the same as his November 2013 form.  (Compare T. 547-548 with T. 881-882.)  However, in December, Dr. Martinez indicated Plaintiff could sit for three hours, and stand and/or walk for three hours, in an eight hour workday.  (T. 881.)  Also, in December, Dr. Martinez indicated Plaintiff could frequently lift and carry up to ten pounds, occasionally lift and carry up to 20 pounds, and never lift and carry more than 20 pounds.  (*Id.*)  In December Dr. Martinez indicated Plaintiff ability to reach was not affected by her impairment.  (T. 882.)  In December, Dr. Martinez wrote that Plaintiff "must avoid repeated use of arm and legs [and] no vibratory tool use."  (*Id.*)

Dr. Martinez provided the similar limitations in his November and December "Function Questionnaire – Upper Extremities" form with some exceptions. (Compare T. 549-550 with 883-884.) In December he indicated Plaintiff's symptoms frequently interfered with her ability to use her right upper extremity for overhead reaching. (T. 883.) In December, he indicated Plaintiff's symptoms occasionally interfered with her ability to perform reaching activities at shoulder level or below. (*Id.*) In December, he indicated Plaintiff's symptoms interfered with her ability to frequently (as opposed to constantly) interfere with her ability to grip and/or grasp. (*Id.*) Also, in December, Dr. Martinez indicated Plaintiff could lift 5-12 pounds bilaterally. (T. 884.)[3]

Here, the ALJ failed to provide good reasons for affording Dr. Martinez's opinions less than controlling weight. In his assessment of Dr. Martinez's opinions, the ALJ afforded the doctor's July 2013 opinion "little weight" reasoning the limitations provided were inconsistent with treatment notations which showed Plaintiff activities to include gardening, camping, shoveling, and standing for her son's football game. (T. 32.) The ALJ stated the doctor's November 2013 opinion was entitled to "little weight" because the limitations were inconsistent with Plaintiff's activities of daily living. (*Id.*) The ALJ afforded Dr. Martinez's December 2013 opinion "little weight" reasoning the limitations were inconsistent with Plaintiff's activities such as camping, gardening, shoveling, and standing for her son's football game. (*Id.*)

Inconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion even from a treating physician. *See Saxon v. Astrue*, 781 F.

---

[3]      Of note, on January 31, 2014, Dr. Martinez noted in his treatment records Plaintiff was able to perform all of her activities of daily living and she had "no significant limitations other than heavy lifting." (T. 842.)

Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007) ); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ); 20 C.F.R. §§ 404.1527(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled). Courts have also held that intermittent treatment, internal inconsistencies, and failure to complete a narrative on a 'check-box' form constitute "good reason" for affording treating source less than controlling weight. *See Camille v. Colvin*, 652 F. App'x (2d Cir. 2016).

Here, the ALJ failed to provide good reasons for affording Dr. Martinez's opinion less than controlling weight because the ALJ relied only on Plaintiff's activities of daily living to discount the opinion. This court has held this reasoning is "specious and unsupported by the law or common sense." *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (the erroneously ALJ discredited a treating source's opinion because plaintiff was "capable of activities such as engaging in activities of daily living, fixing cars in a garage, and overseeing his own medical and psychiatric treatment"). Here, the ALJ did not rely on any other factors, such as objective medical evidence, to support his weight determination. Further, as in *Miller*, the ALJ here did not explain how the performance of Plaintiff's activities translated into the ability to perform substantial gainful work. *Miller,* 122 F. Supp. 3d at 29 (plaintiff's ability to perform activities for an

unspecified amount of time does not undermine a doctor's opinion regarding plaintiff's limitations).

Here, the ALJ not only relied solely on Plaintiff's activities of daily living to discredit her treating source's opinions, the ALJ appears to have misconstrued the record regarding Plaintiff's activities. To be sure, the treatment notes do contain vague descriptions of activities Plaintiff engaged in, such as gardening and standing at her son's high school football game. (T. 909, 910, 917, 924, 932.) However, when those activities are read in context, it is apparent that such activities either caused or exacerbated Plaintiff's pain and prompted her to seek medical treatment. For example, chiropractic treatment notations indicated Plaintiff felt "great" after her last appointment; however, her pain increased the morning after standing at a high school football game. (T. 910.) Plaintiff's treating chiropractor also advised her to "stop with the weeding at this time since it continually aggravates her complaint." (T. 920.) Therefore, not only were the descriptions of the activities vague in terms of length, time, and exertion required, the activities caused Plaintiff pain and she was even advised to cease activities, such as weeding.

To be sure, as outlined by Defendant, some of Dr. Martinez's treatment notations indicated Plaintiff's condition was "stable" and responded to conservative treatment. (Dkt. No. 12 at 23 referring to T. 301, 842-843, 895-896.) Defendant also points to inconsistencies between Dr. Martinez's medical source statements and treatment notations. (Dkt. No. 12 at 23.) For example, Dr. Martinez opined Plaintiff would have deficits in concentration; however, treatment notations do not reflect any concentration or memory deficits. (Dkt. No. 12 at 23 referring to T. 532, 535, 536.) However, the ALJ

did not provide this reasoning in his assessment of Dr. Martinez's medical opinions. Nor can this reasoning be "gleaned" from the record.  *See Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").  This court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."  *Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)); *see Thomas v. Colvin*, 302 F. Supp. 3d 506, 511 (W.D.N.Y. 2018) ("*post hoc* rationalizations are not an appropriate substitute for an ALJ's duty to support her conclusions by reference to substantial evidence").  Therefore, remand is required for a proper analysis of Dr. Martinez's medical source opinions and subsequent RFC determination.

## B. Credibility Analysis

Plaintiff argues the ALJ erred in his credibility analysis because he cherry-picked the evidence to support his conclusion.  (Dkt. No. 12 at 19-22.)  Because remand is necessary for a proper evaluation of Dr. Martinez's medical opinion, remand is also necessary for a new credibility analysis based on that assessment.

Of note, Plaintiff specifically asserts the ALJ misread the record concerning her work history.  (Dkt. No.25-26.)  The ALJ stated Plaintiff provided "conflicting information regarding past work [. . .] [Plaintiff] stated she stopped working on November 30, 2012 because she was laid off.  However, she testified she was offered a retirement package

in 2010." (T. 31.)  The ALJ relied on Plaintiff's apparent inconsistent testimony in determining she "may not be entirely reliable." (*Id.*)

A review of the record supports Plaintiff's assertion that the ALJ misunderstood Plaintiff's work history.  Plaintiff worked at Verizon (a "telecommunications" company) until October 2010 at which time she took a retirement package.  (T. 216, 282.)  Plaintiff then worked for an awning company until she was let go in November of 2012.  (T. 216, 282.)  Plaintiff provided testimony at the hearing in which she indicated she worked at Verizon until October 2010, but received retirement income from them after that date. (T. 44-45.)  Therefore, the ALJ appears to have misread the record and relied on his misunderstanding to diminish Plaintiff's credibility.  The issue of Plaintiff's work history can be clarified on remand.

### C.  Listing § 1.04A

If an ALJ determines a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii)(d).  The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity.  *Id.* § 404.1525(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. § 404.1509, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* at § 404.1520(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530,

110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Although an ALJ may award benefits at step three, a plaintiff who fails to prove her impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four. *See id.* at § 404.1520(e).

Here, at step three, the ALJ concluded Plaintiff's spinal impairment did not meet or equal Listing § 1.04A for disorders of the spine, defined in relevant part as:

> 1.04 Disorders of the Spine (e.g., ... spinal arachnoiditis, spinal stenosis, ... degenerative disc disease ...) resulting in compromise of a nerve root (including the cauda equina) or spinal cord. With: (1) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine) ...

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. The ALJ concluded the medical evidence did "not establish a spinal impairment, with neurological deficits, as described in the listing." (T. 25.)

Plaintiff asserts the ALJ erred in his assessment of Listing § 1.04A on two grounds. First, Plaintiff asserts the ALJ erred in his conclusion her spinal impairment did not meet the Listing because he failed to provide sufficient analysis to support his conclusion. (Dkt. No. 10 at 17.) Second, Plaintiff argues her spinal impairment met all of the criteria of Listing § 1.04A and therefore remand for calculation of benefits is warranted. (*Id.* at 18-20.) Here, the ALJ properly assessed Listing 1.04A and evidence

in the record supported the ALJ's determination that Plaintiff's spinal impairment did not meet all of the criteria of the Listing. Therefore, although remand is necessary for a proper evaluation of Plaintiff's RFC, including a credibility determination, remand is not warranted for calculation of benefits based Plaintiff meeting a Listing.

Here the ALJ specifically mentioned and applied Listing § 1.04A at step three. (T. 25.) An ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," however, the absence of an express rationale for an ALJ's conclusions does not prevent a court from upholding them so long as the court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Berry,* 675 F.2d at 469. Although the ALJ did not provide an exhaustive analysis at step three, he thoroughly outlined the medical evidence relating to Plaintiff's spinal impairment in his decision. As in *Salmini v. Comm'r of Soc. Sec.,* 371 F. App'x 109, 112-113 (2d Cir. 2010), this is not a case "in which we would be unable to fathom the ALJ's rationale [for his step-three analysis] in relation to evidence in the record," and, therefore, there is no need ... to remand this case to the ALJ for clarification.

In his written decision, the ALJ thoroughly outlined the medical evidence regarding Plaintiff's spinal impairment. The ALJ noted Dr. Martinez assessed Plaintiff with herniated disc at L2-L3. (T. 27, 30.) The ALJ reviewed the medical examination performed by consultative examiner, Hongbiao Liu, M.D., which indicated lumbar spine flexion and extension "80 degrees, lateral flexion on the left and right 20 degrees" and negative straight leg raises bilaterally. (T. 28.) Most significantly, the ALJ outlined treatment records from treating source, John Pollina, M.D. (T. 30.) As summarized by

the ALJ, Dr. Pollina treated Plaintiff for her spinal impairment.  Dr. Pollina's examination revealed no deformity in Plaintiff's spine, no midline point tenderness or paraspinal spasm, intact power in the legs in all muscle groups, no dermatomal sensory loss, symmetrical reflexes at the knees and ankles, normal gait and station, no pain with passive range of motion of the hips, no straight leg raising pain, warm feet with no edema, and no atrophy or deformity noted in the lower extremities.  (T. 1001.)  Dr. Pollina reviewed Plaintiff's 2014 lumbar MRI and concluded Plaintiff had "significant disc space height and degeneration throughout the lumbar spine," with "bilaterally synovial cysts at L5-S1," and "Grade I spondylolisthesis at L4-L5."  (*Id.*)  Therefore, although not specifically outlined in his step three analysis, it is clear from the ALJ's discussion of the medical evidence that he took into consideration evidence pertaining to Plaintiff's spinal impairment.

Plaintiff stresses she meets Listing § 1.04A and cites to medical evidence in the record to support her contention.  (Dkt. No. 10 at 18-20.)  As stated herein, the burden is on Plaintiff to prove she meets a Listing and Plaintiff "must meet all of the specified medical criteria" of a listing.  *Sullivan,* 493 U.S. at 530.

Plaintiff asserts she meets all the requirements of Listing 1.04A.  Plaintiff argues there is compromise of the nerve root as evidence in her 2014 MRI which revealed "broad based left foraminal disc protrusion displacing the exiting left L2 nerve root." (Dkt. No. 10 at 19 referring to T. 872-873.)  Listing § 1.04A requires "evidence of nerve root compression."  Dr. Pollina reviewed Plaintiff's 2014 MRI and did not diagnose nerve root compression.  (T. 1001.)  Dr. Pollina stated the MRI showed "significant disc space height and degeneration throughout the lumbar spine [. . .] bilateral synovial cysts at L5-

S1 [. . .] Grade I spondylolisthesis at L4-L5." (*Id.*)  No other acceptable medical source diagnosed Plaintiff with nerve root compression.  Assuming Plaintiff did have nerve root compression, substantial evidence in the record still supported the ALJ's determination Plaintiff did not meet Listing § 1.04A.  *See Sanders v. Comm'r of Soc. Sec.,* 506 F. App'x 74, 76 (2d Cir. 2012) (substantial evidence supported ALJ's determination that plaintiff did not meet Listing § 1.04 where no doctor diagnosed nerve root compression and the record contained evidence that plaintiff had good range of motion in the lumbar spine, full muscle strength, and no atrophy or abnormal movements).

Plaintiff cites evidence in the record of limited range of motion in the lumbar spine, sensory/reflex loss, and muscle weakness.  (Dkt. No. 10 at 19-20.)  To be sure, evidence in the record contained such notations.  Notations from Dr. Martinez provide objective observations of "limited" range of motion in Plaintiff's low back in 2014 and 2015.  (T. 891-892, 893-894, 951.)  One notion, dated May 17, 2014, from Plaintiff's treating chiropractor indicated "patella deep tendon reflexes were graded 2+ bilaterally while the Achilles deep tendon reflexes were graded 1+ bilaterally."  (T. 933.)  Of note, on that same visit the chiropractor noted Plaintiff had full muscle strength in her lower extremities.  (*Id.*)  On June 24, 2014, Plaintiff's chiropractor indicated she "still has altered sensation in her left lower extremity but it is different from her initial visit."  (T. 923.)  Notations indicated Plaintiff was advised to follow up with Dr. Pollina, but she declined.  (*Id.*)  The chiropractor again noted full muscle strength in Plaintiff's lower extremities.  If there is involvement of the lower back, as in the case at hand, Listing § 1.04A requires "positive straight leg raising test (sitting and supine)."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.   Plaintiff cites evidence in the record of a positive straight leg

raise test and positive Slump test in May of 2014. (Dkt. No. 10 at 19 referring to T. 932.)

Although there is evidence of reduced range of motion, sensory/reflex loss, and muscle weakness, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Here, the ALJ outlined evidence from Dr. Pollina indicating full muscle strength, no sensory loss, symmetrical reflexes, and normal gait and station. (T. 30 referring to T. 1001.) In outlining Plaintiff's medical treatment, the ALJ also noted Dr. Pollina's observation that Plaintiff had no straight leg raise pain in July 2014. (*Id.*) The ALJ noted Dr. Liu's observation that Plaintiff had negative bilateral straight leg raises in August of 2014. (T. 28 referring to T. 541.) Therefore, although medical evidence in the record could support Plaintiff's contention, there is substantial evidence in the record to support the ALJ's determination. Because the ALJ's findings must be sustained if

supported by substantial evidence even if substantial evidence supported plaintiff's position, the ALJ's step three determination is upheld.

Overall, remand for further proceeding is necessary for a proper analysis of Dr. Martinez's opinions, credibility determination, and subsequent RFC determination. Remand for calculation of benefits is not warranted because substantial evidence in the record supported the ALJ's determination that Plaintiff's spinal impairment did not meet Listing 1.04A.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:        September 17, 2018

William B. Mitchell Carter
U.S. Magistrate Judge